UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| LOBSTER 207, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-CV-00552-LEW |
| | ) | |
| WARREN B. PETTEGROW, ANTHONY D. PETTEGROW, JOSETTE G. PETTEGROW, STEPHEN M. PEABODY, POSEIDON CHARTERS INC., and TRENTON BRIDGE LOBSTER POUND, INC., | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION ON PLAINTIFF'S
MOTION FOR ATTACHMENT AND TRUSTEE PROCESS**

The matter is before the Court on Plaintiff Lobster 207's Motion for Attachment and Trustee Process (ECF No. 4).  Rule 64 of the Federal Rules of Civil Procedure provides that provisional remedies like attachment are available in a federal court to the extent they would be available in a state court within the District.  In order to grant a motion for attachment and trustee process, the court must find that it is

> more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

Me. R. Civ. P. 4A(c), 4B(c); *Lund v. Smith,* 787 F. Supp. 2d 82, 83 (D. Me. 2011).

"Under this standard, a moving party must show a greater than 50% chance of prevailing." *Richardson v. McConologue*, 672 A.2d 599, 600 (Me. 1996). To determine the motion, "the court assesses the merits of the complaint and the weight and credibility of the supporting affidavits," but the court is not required to "address complex legal issues or rectify factual disputes in a summary attachment hearing." *Porrazzo v. Karofsky*, 1998 ME 182, ¶ 7, 714 A.2d 826. The moving party also must demonstrate the amount of damages to which it would be entitled upon prevailing, and if it cannot substantiate the amount requested in the motion, the court has the discretion to award an attachment in a lesser amount that is supported in the movant's showing. *Cirrincione v. Pratt Chevrolet*, 275 F. Supp. 2d 26, 28 (D. Me. 2003). As to either liability or damages, "[t]he arguments of counsel cannot substitute for the required sworn statements of relevant facts." *Wilson v. DelPapa*, 634 A.2d 1252, 1254 (Me. 1993).

Following my review of the record associated with the motion, including supplemental affidavits submitted with Lobster 207's reply that better inform the issue of standard offer dock price that is critical to Lobster 207's damage calculation,[1] I am persuaded that an order of attachment and trustee process is appropriate in this case, but <u>only</u> as to Anthony Pettegrow, Josette Pettegrow, Warren Pettegrow, Poseidon Charters, Inc. and the Trenton Bridge Lobster Pound, Inc. As to those Defendants, I find it is likely

---

[1] The record strongly suggests there was a "standard offer" issued by Lobster 207 that was a set amount (i.e., $1.45) higher than the "boat price," and that the standard offer would rise or fall in relationship to the boat price, not in relationship to the dock on which the catch landed (except in the case of the BJ Co-op's docks, which received an additional 20 cents per pound). In this regard, I believe a fact finder likely would find Ms. Billings' testimony credible, barring some damaging cross-examination that I cannot anticipate at this time, on this record. With the standard offer established in this fashion, Eric Purvis, a certified public accountant and a partner of Marcum LLP in Portland, Maine, attests that the reasonable estimation of Lobster 207's losses is $1,438,181.23.

that Lobster 207 will be able to substantiate its claims that they abused Warren Pettegrow's position of trust as CEO of Lobster 207 to deprive Lobster 207 of revenue in the amount of $1,438,181.23.  This sum represents most of the alleged schemes, but omits the claim for $501,989.10 related to Lobster 207's agreement to pay a 20-cent premium for BJ Co-op lobster.  As to that alleged scheme, my impression is that Lobster 207's principals were willing to pay a 20-cent premium to assure Lobster 207's access to the lobsters landed at BJ Co-op's docks, and although there is evidence that they relied on a misrepresentation of fact concerning prior dealings between the BJ Co-op and Trenton Bridge, I am not persuaded that Lobster 207 is likely to prove its reliance on the alleged misrepresentation was reasonable given that the representation would have been subject to verification.

As to Defendant Stephen Peabody, my conclusion regarding the 20-cent premium leaves him potentially subject to a claim concerning the alleged "phantom lobster scheme." I am not persuaded, at this juncture, that Lobster 207 is likely to recover damages from Mr. Peabody in relation to that claim.  Accordingly, the order does not grant an attachment against Mr. Peabody.

## CONCLUSION

Defendants' Motions to Strike (ECF Nos. 59 & 60) are **DENIED**.  Defendants have received ample opportunity to rebut the evidence they would have me strike.  Plaintiff's Motion for Attachment and Trustee Process (ECF No. 4) is **GRANTED IN PART and DENIED IN PART**.  The Motion is **DENIED** as to Defendant Peabody.  As to the remaining Defendants, the Motion is **GRANTED** in the reduced amount of $1,438,181.23.

Finally, Plaintiff's request that I authorize Lobster 207 to deposit monthly payments to Trenton Bridge in an escrow account is **DENIED** as insufficiently briefed.

**SO ORDERED.**

Dated this 3rd day of June, 2020.

                                             /s/ Lance E. Walker
                                        UNITED STATES DISTRICT JUDGE