UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LOBSTER 207, LLC,                    )
                                     )
                Plaintiff            )
                                     )
        v.                           )       1:19-cv-00552-LEW
                                     )
WARREN B. PETTEGROW, et al.,         )
                                     )
                Defendants           )

### ORDER ON MOTION FOR PARTIAL RECISSSION AND
### ON MOTION TO RETAIN DESIGNATION

Defendants Anthony D. Pettegrow, Josette G. Pettegrow, Trenton Bridge Lobster Pound, Inc., Warren B. Pettegrow, and Poseidon Charters, Inc. (Defendants) move pursuant to Federal Rule of Civil Procedure 60(b) to "rescind" the provision in the Court's Order on Motion for Reconsideration (Reconsideration Order, ECF No. 235) permitting Plaintiff to redact certain information from its responses to discovery requests. (Motion for Partial Recission, ECF No. 303.) Plaintiff filed with its opposition to Defendants' motion a cross-motion to retain the "attorneys eyes only" designation on certain financial information produced by Plaintiff. (Motion to Retain Designation, ECF No. 309.)

Following a review of the relevant portions of the record, and after consideration of the parties' arguments, the Court grants Defendants' motion to rescind and denies Plaintiff's motion to retain designation.

### BACKGROUND

In its March 24, 2021, Order on Discovery Issues (Discovery Order, ECF No. 176), the Court noted that, "[a]ccording to Plaintiff, after Plaintiff learned of the alleged

misrepresentation [by Defendants regarding the price paid for lobsters], it adjusted the amount it paid for lobsters and now is more profitable." (Discovery Order at 1.)  The Court therefore found "Plaintiff's pricing and profitability are relevant to Plaintiff's contention that some of the defendants misrepresented the price they paid for lobsters," and "whether Plaintiff's pricing and its margins are comparable to the prices represented by the defendants is information that is probative of Plaintiff's misrepresentation and damages claims." (*Id*. at 1-2.)  The Court, therefore, ordered Plaintiff to produce "pricing records, purchasing records, and federal/state landings (SAFIS or Trip Ticket)" through the date of the Discovery Order. (*Id*. at 2.)

Plaintiff produced pricing and purchasing records but redacted the names and license numbers of individual fishermen from whom it had purchased lobsters.  Defendants then asked the Court to order Plaintiff disclose the identities of the fishermen. The Court ultimately concluded it was "not convinced the redacted information (i.e., the names and license numbers of the fisherman) is probative of the claims or defenses," and held that Plaintiff was not required to provide that information.  (Reconsideration Order at 4.)

Earlier, Defendants had issued a subpoena to third party Black Pearl Seafood, LLC (Black Pearl), a company that acted as a middleperson between Plaintiff and the individual fishermen; the records produced by Black Pearl included pricing information with the names of the fishermen with whom it interacted.  (Motion at 3.)  Black Pearl's records also included information regarding additional payments by Plaintiff to certain vendors for

lobster, per pound.[1]   (*Id.*)   Defendants also issued multiple subpoenas to individual fishermen.   The records produced by the fishermen included information regarding payments they received from Plaintiff.   (*Id.* at 4-5.)

On January 25, 2022, in a supplement to their Initial Disclosures, Plaintiff disclosed the names of 14 additional individual fishermen as potential witnesses with knowledge of lobster pricing during Defendant Warren Pettegrow's tenure as Plaintiff's CEO.   On February 24, 2022, Plaintiff produced two spreadsheets documenting additional payments Plaintiff made to lobster vendors for lobsters, which vendors included individual fishermen whose names were redacted.   (*Id.* at 5.)   Plaintiff produced another spreadsheet on April 4, 2022, which showed additional payments to individuals whose names were redacted.   (*Id.*) With the information derived from the documents and other sources, including deposition testimony, Defendants have been able to connect some purchasing and pricing records to some individual fishermen.   (*See, e.g.*, Defendants' Reply in Support of Partial Recission at 1-5; Defendants' Opposition to Motion to Retain Designation at 7-8, ECF No. 318-1.)

In its Reconsideration Order, with the understanding that the parties had previously used an "attorneys eyes only" designation in discovery, (*see* Plaintiff's Response to Request for Reconsideration at 4, ECF No. 223), the Court permitted the parties to designate responses to discovery as "attorneys eyes only," and established a procedure for a party to object to another party's designation.   (Reconsideration Order at 3-4.)   Plaintiff

---

[1] Plaintiff asserts the additional payments for the lobsters were for "value-added services" the fishermen and other vendors provided, such as trucking and grading.   (Plaintiff's Opposition to Motion for Partial Recission at 3-4, ECF No. 304.)   Defendant disputes this characterization of the payments.   (Defendants' Reply in Support of Partial Recission at 1-5, ECF No. 312-1.)

placed the designation on certain of its financial records, primarily related to pricing, generated after Defendant Warren Pettegrow's employment ended.  Following the ordered procedure, Defendants objected to the designations on May 31, 2022.  (*See* Attachment A to Plaintiff's Opposition to Motion for Partial Recission, ECF No. 304-1.)   Plaintiff moves to maintain the designations at least until the Court reaches decision on the parties' anticipated cross-motions for summary judgment.   (Plaintiff's Motion to Retain Designation at 8-9, ECF No. 309.)

DISCUSSION

### A.    Identities of Individual Fishermen

Defendants bring their motion to "rescind" part of the Court's Reconsideration Order pursuant to Federal Rule of Civil Procedure 60(b).  "It is … well settled that Rule 60 applies only to final judgments," however.  *Farr Man & Co., Inc. v. M/V Rozita*, 903 F.2d 871, 874 (1st Cir. 1990).  The Advisory Committee Note to the 1946 amendment of Rule 60(b) underscores the finality requirement of Rule 60:

> The addition of the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.

Fed. R. Civ. P. 60(b), Advisory Committee's Note.

The Reconsideration Order is not a final order as contemplated by Rule 60.  The Reconsideration Order, "[a]s an interlocutory order," however, is "subject to the district court's discretionary power to alter it at any time prior to the entry of [a] final decree." *Farr Man*, 903 F.2d at 875; *see also Nieves-Luciano v. Hernández-Torres*, 397 F.3d 1, 4

4

(1st Cir. 2005) ("Interlocutory orders … 'remain open to trial court reconsideration' until the entry of judgment.") (citation omitted); *Papkee v. MECAP, LLC*, No. 2:20-cv-00006-DBH, 2021 WL 1164770, at *4 n.5 (D. Me. Mar. 26, 2021) (*aff'd*, Apr. 13, 2021) (same, citing *Farr Man*); *Int'l Ass'n of Machinists & Aerospace Workers v. Verso Corp*., 121 F. Supp. 3d 201, 217-18 (D. Me. 2015) (a party is entitled to reconsideration of a prior order where the party demonstrates "the availability of new evidence not previously available."). Consistent with this principle, District of Maine Local Rule 7(f) allows a party to ask the Court to reconsider an order beyond the fourteen-day filing period for such motions if the motion is based on "newly available material evidence." D. Me. Loc. R. 7(f).

Defendants contend that Plaintiff paid some vendors, including individual fishermen, more than it paid other vendors and that the purchase data contradicts Plaintiff's allegations that it paid more for lobsters while Defendant Warren Pettegrow was CEO of Plaintiff than after he left the company, and more than Plaintiff paid Defendant Trenton Bridge Lobster Pound, Inc. for lobsters.  The Court previously rejected Defendants' argument that the fishermen's identities were relevant to whether Plaintiff paid more for its lobsters as alleged.[2]  The Court remains unconvinced that the identities are relevant to

---

[2] Defendants initially suggest (Motion for Partial Recission at 3-4, 9) and later assert (*Id*. at 10) that the Court "erred" when it issued its Reconsideration Order without allowing Defendants to file a motion to compel.  Exercising its discretionary authority, the Court denied Defendants' request for leave to file a motion to compel, but the Court addressed in the Reconsideration Order issues related to Defendants' requested motion.  If Defendants believed the Court erred in its order, the manner and time for Defendants to assert the error were through an objection filed in accordance with Federal Rule of Civil Procedure 72 or a timely motion pursuant to Local Rule 7(f).  The Court did not consider Defendants' claim of error made at this stage of the proceedings.

a basic assessment of what Plaintiff paid for lobsters.  The pricing and purchasing data, which the Court required Plaintiff to produce, are relevant to that issue.

Subsequent to the Court's Reconsideration Order, however, Plaintiff identified multiple fishermen as individuals who could have information Plaintiff "will use to support its claims or defenses."  (Supplemental Initial Disclosures, PageID #: 6137, ECF No. 303-2.)  Given the number of fishermen identified as potential witnesses and the information attributed to the fishermen, it is apparent Plaintiff could call individual fishermen to testify as to the price of lobsters, including the amount Plaintiff paid for the lobsters during Defendant Warren Pettegrow's employment with Plaintiff.  The amount paid by Plaintiff to each fisherman is relevant to the foundation for such testimony, the interests of each fisherman who might testify, and the nature of each fishermen's relationship with Plaintiff.  Furthermore, because Plaintiff evidently intends to call as witnesses certain fishermen to testify as to the fishermen's experience with Plaintiff, Defendants are entitled to explore whether other fishermen had the same or different experiences with Plaintiff.  Plaintiff's supplemental disclosure constitutes newly available information to support a modification of the Court's order.  The Court will amend the Reconsideration Order to require Plaintiff to provide the names of the fishermen on the records it has produced to Defendants.

## B.    Attorneys' Eyes Only Designation

Plaintiff designated certain pricing and associated records produced in discovery as "attorneys eyes only." Defendants' counsel argues that the assistance of Defendants and their bookkeeper is necessary to "consolidate[e] and summariz[e]" the data produced by Plaintiff in preparation for trial and for presentation to the jury.  (Defendants' Opposition

to Motion to Retain Designation at 9-10.)  Plaintiff moves to retain the designation, citing in part the need to prevent Defendants from using the pricing information to "undercut" Plaintiff's prices with its existing docks and wholesalers. (Plaintiff's Motion to Retain Designation at 10.)

"Attorneys' eyes only disclosure is appropriate only in limited circumstances, such as cases involving trade secrets, because it hinders the plaintiff's ability to aid counsel in the review of the evidence and to determine her strategy in light of it." *Theidon v. Harvard University*, 314 F.R.D. 333, 336 (D. Mass. 2016).  Whether to maintain the designation requires the balancing of a party's need for the information to assist in the development and implementation of case strategy against the need to protect proprietary information to which an opposing party would not have access without the litigation.

Here, Defendants have demonstrated a legitimate need to disclose the information in preparation for and at trial.  Counsel understandably seek the benefit of Defendants' history and experience in the lobster business in the assessment of the pricing data and other relevant financial information produced in discovery in a case in which Plaintiff seeks to recover substantial monetary damages.  The price paid for lobsters after Defendant Warren Pettegrow's separation from the company is relevant to an assessment of how, if at all, Plaintiff's pricing practices differ without Defendant Warren Pettegrow serving as CEO.  In addition, to the extent Plaintiff argued that disclosure of the information might undermine Plaintiff's price negotiations for the upcoming season, the prices for the current season have presumably been established at this point. Plaintiff's proprietary interest, therefore, is likely less now than when it made the designation.

Plaintiff argues that if the Court is inclined to remove the designation, the Court should defer removal until after the Court rules on the parties' anticipated motions for summary judgment. Some of the information, however, appears to be relevant to the summary judgment process. For instance, in its memorandum outlining the bases of its anticipated motion for summary judgment, Plaintiff represents that it intends to move for summary judgment on two counterclaims based on an arbitration decision on Defendant Warren Pettegrow's employment-related claim. (Defendants' Pre-Filing Conference Memorandum at 2-3, ECF No. 317.) Defendants have attempted to distinguish and limit the significance of the decision in part because the arbitrator did not have the pricing data after Defendant Warren Pettegrow was terminated as Plaintiff's CEO. (*See e.g.*, Response to Motion to Retain Designation at 2, ECF No. 318.) Defendants will presumably seek to use some of the post-termination pricing data to attempt to demonstrate that, contrary to Plaintiff's argument, the arbitration decision should not estop Defendants from litigating certain issues in this case. Because the information could be material to some of the summary judgment issues, Defendants' counsel should have the ability to discuss the information with Defendants and their bookkeeper in connection with the summary judgment process as well as trial.

In sum, given that the information is relevant, that Plaintiff's proprietary interest is evidently less now than when the designation was made, that Defendants (and their bookkeeper) have expertise that could assist counsel, and that the information is likely relevant to the summary judgment and trial processes, the Court concludes that removal of the designation at this stage of the proceedings is appropriate.

## CONCLUSION

Based on the foregoing analysis, the Court grants Defendants' Motion for Partial Recission.  Within seven days of the date of this order, Plaintiff shall disclose the identities of the fishermen referenced in the documents produced by Plaintiff.  The Court also denies Plaintiff's Motion to Retain Designation. The "attorneys' eyes only" designation shall be removed from the documents that are the subject of the motion. The documents shall be deemed confidential under the terms of the Confidentiality Order.

## NOTICE

Any objections to the Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of August, 2022.