UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| LOBSTER 207, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00552-LEW |
| | ) | |
| WARREN B. PETTEGROW, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER ON DEFENDANTS' MOTION TO EXCLUDE OR ALTERNATIVELY LIMIT THE TESTIMONY OF PLAINTIFF'S <u>DESIGNATED EXPERT, CLARE FREEMAN</u>

This matter comes before the Court on Motion (ECF No. 336) of Defendants Warren B. Pettegrow, Poseidon Charters, Inc., Anthony D. Pettegrow, Josette G. Pettegrow, and Trenton Bridge Lobster Pound, Inc. (the "Pettegrow Defendants") to exclude or alternatively limit the testimony of Plaintiff Lobster 207's designated expert, Clare Freeman.  The Motion is denied.

### BACKGROUND

The reader's familiarity with the nature and history of the case is assumed and the background statement, therefore, focuses on matters material to the legal issues presented in the motion.

On January 29, 2021, Lobster 207 designated Clare Freemen, C.F.E., as an expert witness (ECF No. 336-3).  Ms. Freeman has been the CFO of Lobster 207 since October of 2020.  In her capacity as CFO of Lobster 207, Ms. Freeman provides daily financial

accounting services to Lobster 207 and has personal knowledge of Lobster 207's financial books and records, including books and records associated with Lobster 207's transactions with the Trenton Bridge Lobster Pound. Based on the knowledge gained from Lobster 207's books, records and transaction history, Ms. Freeman is expected to testify concerning Lobster 207's financial records through the date of Warren Pettegrow's termination as Lobster 207's CEO, including but not limited to Lobster 207's internal accounting records, bank account records, invoices, expenses, and disbursements.

In addition to her work as CFO, Ms. Freeman is a Certified Fraud Examiner and a principal at Cox Litigation Support, where she provides corporate financial management, forensic accounting, litigation support, and risk management services to clients. Ms. Freeman has worked as a financial manager for over fifteen years. Ms. Freeman also has past experience working for a Portland lobster wholesaler, where she provided services similar to those she now provides for Lobster 207. Ms. Freeman has served as an expert witness in several other cases.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Although Rule 702 authorizes expert opinion testimony, it also places conditions on the admissibility of expert opinions and requires district courts to act as gatekeepers, ensuring that the expert's proffered testimony "rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594–97 (1993).  However, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."  Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendments (quoting *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)).  The rejection of expert testimony is the exception rather than the rule.  *Id.*  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.

Since the Rules' adoption in 1972, it has been understood that the admissibility of expert opinion testimony is primarily a question of utility.  *See* Fed. R. Evid. 702 Advisory Committee Note to 1972 proposed rules ("Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier.").[1]  An expert's opinion may be useful to a finder of fact even when it is not generally accepted by experts in the field, *Daubert*, 509 U.S. at 589, so long as the opinion has "a reliable basis in the knowledge and experience of [the expert's] discipline."  *Id.* at 592.  Provided that an

---

[1] "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."  Fed. R. Evid. 702 Advisory Committee Notes (quoting Ladd, *Expert Testimony*, 5 Vand.L.Rev. 414, 418 (1952)).

3

expert's knowledge and experience (or skill, training, or education) are equal to the task, the expert "need not have had first-hand dealings with the precise type of event that is as issue" to be able to provide useful guidance to the fact finder. *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 80 (1st Cir. 2004). "Nothing in [Rule 702] is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony." Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendments. Furthermore, weaknesses in the factual underpinnings of an opinion do not dictate exclusion; issues of weight and credibility generally are matters for the fact finder's consideration, unless it is apparent that the opinion is tethered to the facts only by the say so of the expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## DISCUSSION

Upon review of Ms. Freeman's designation and supporting documentation, I find that Ms. Freeman's credentials and years of experience qualify her to testify as an expert witness. Despite Defendants attempts to belittle Ms. Freeman's experience, Ms. Freeman's work as CFO, her qualification as a CFE, and her work in litigation support provide a reliable foundation for the discrete areas of testimony that she intends to give.

It is not required that Lobster 207 find an expert witness that has personally witnessed and has experience with every issue that will be presented at trial. *Microfinancial, Inc.*, 385 F.3d at 80. Instead, under Rule 702, a testifying expert "should have achieved a meaningful threshold of expertise" in the given area. *Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc.*, 405 F.3d 36, 40 (1st Cir. 2005). Based on my review, it

appears that Ms. Freeman has "specialized knowledge" that will prove useful to the finder of fact and is specifically relevant to the questions surrounding this case. I do not think that Defendants' statement that it does not take an expert to perform "simple arithmetic" (Motion at 2, 3, 9, 13) is representative of the situation. This litigation involves years of financial records, allegations of financial schemes, and a unique industry. Ms. Freeman is expected to assist the trier of fact in understanding years of this discrete data that a layperson would likely have trouble parsing without assistance and explanation.

    I appreciate Defendants' apprehension that expert testimony can carry with it an "unwarranted aura of special reliability and trust worthiness, and as such, courts must guard against letting it intrude in areas that jurors, by dint of common experience, are uniquely competent to judge without the aid of experts." *United States v. Soler-Montalvo*, 44 F.4th 1, 16 (1st Cir. 2022) (cleaned up). However, Ms. Freeman's review of the parties' pricing data, tax filings, external auditing reports, accounts-payable, accounts-receivable, bank records and internal correspondence would surely aid an untrained layman to determine intelligently the relationship between Lobster 207's business records and its claims. Ms. Freeman's experience analyzing this documentation should make her a reliable guide with relevant insights.

    I also appreciate Defendants' concern over the fact that Ms. Freeman has not produced "workpapers" in support of her findings and that much of her proposed testimony is factual in nature and might be provided by another witness. But her focus on the books and accounts is apparent and she has relevant expertise surveying these kinds of business records. She is an apt witness to describe the state of these records and identify perceived

irregularities in the same. In any event, nothing in this ruling prevents the exclusion of a particular opinion if Ms. Freeman wanders off course into speculative terrain or otherwise journeys beyond the scope of her designation.

As for the particular topics challenged in Defendants' Motion, the lobster-crate and customer-list valuation issues are essentially mooted by a prior summary judgment ruling. What remains concerns post-closing transactions, how they are reflected in the relevant books, and what conclusions one might draw from the same. These are the kind of mixed fact and opinion matters that fall within the ordinary observations and insights of someone with Ms. Freeman's experience and background.[2] Moreover, it is not improper for Ms. Freeman to serve in part as a fact witness who lays a foundation for opinions offered by others, such as Messrs. Barlow and Purvis.

While a trial court may hold a hearing to screen the proffer of expert testimony in advance of trial, *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012), a hearing is unnecessary where the initial inquiry suggests that a hearing is unlikely to expose the kind of unreliable opinion that deserves special attention above and beyond what the adversarial process will provide at trial. *Kumho Tire*, 526 U.S. at 152. n.4. I find that the issues that arise in this Motion present only garden-variety concerns of weight and do not categorically undermine the reliability or utility of Ms. Freeman's qualifications and methods. These types of issues are meant to be resolved through cross-examination. I do not believe that any new information or opinions would be gleaned from a *Daubert* hearing that would not

---

[2] As Lobster 207 observes, some of Ms. Freeman's opinion testimony may be susceptible to classification under Rule 701. A given witness may be qualified to provide both lay and expert testimony. *United States v. Valdivia*, 680 F.3d 33, 50 (1st Cir. 2012).

6

have been presented in these briefings. For this reason, I deny Defendants' request for a *Daubert* hearing.

Although Defendant's Motion will be denied, Ms. Freeman will be confined to discuss the discrete topics that were identified, sans any issues that were disposed of in prior orders. Additionally, Ms. Freeman cannot assert that a transaction was fraudulent, wrongful, or otherwise assign causation; opine on any valuation issues; testify as an expert in regard to contract interpretation; or provide testimony overlapping with other designated experts.

## CONCLUSION

For the foregoing reasons, Pettegrow Defendants' Motion (ECF No. 336) is DENIED and the jury will determine what weight to give Clare Freeman's testimony.

**SO ORDERED.**

Dated this 6th day of January, 2023.

/S/ Lance E. Walker
UNITED STATES DISTRICT JUDGE