UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **LOBSTER 207, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Docket No. 1:19-cv-00552-LEW |
| | ) |
| **WARREN B. PETTEGROW** et al., | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S REPLY TO OPPOSITIONS TO MOTION TO TRANSFER TRIAL TO PORTLAND, MAINE

**NOW COMES,** the Plaintiff, Lobster 207, LLC ("Lobster 207"), by and through its undersigned attorneys, and hereby replies to the Pettegrow Defendants' Response in Opposition to the Plaintiff's Motion to Transfer Trial (ECF No. 542) (the Pettegrow Defendants' "Opposition") and Stephen Peabody's Opposition to Plaintiff's Motion to Transfer Trial to Portland, Maine (ECF No. 544) (Mr. Peabody's "Opposition").

The Pettegrow Defendants' Opposition focuses almost exclusively on a purported "forum-selection clause" in the parties' Asset Purchase Agreement ("APA"). *See Opp.* at 1-2 (arguing that because the parties "contractually agreed to resolve disputes in state or federal courts located in Penobscot County . . . this provision should be the end of the consideration of this motion"). The APA provides as follows:

> WITH REGARD TO ANY DISPUTE <u>IN CONNECTION WITH THIS AGREEMENT</u>, EACH PARTY HERETO CONSENTS TO THE PERSONAL JURISDICTION OF ALL FEDERAL OR STATE COURTS IN MAINE, AGREES TO ACCEPT PROCESS SERVED IN ACCORDANCE WITH APPLICABLE RULES OF ANY SUCH COURT, AND AGREES TO WAIVE ANY OBJECTIONS TO PERSONAL JURISDICTION OF SUCH COURT, REGARDLESS OF WHETHER SUCH PARTY RESIDES WITHIN THE STATE OF MAINE AT THE TIME A LEGAL ACTION IS COMMENCED. EACH PARTY FURTHER AGREES THAT ANY COURT ACTION WITH RESPECT TO ANY SUCH DISPUTE MAYBE BROUGHT SOLELY IN A FEDERAL OR

STATE COURT LOCATED IN PENOBSCOT COUNTY, MAINE.

*See ECF No. 1* at Exhibit A, § 6.11(d) (emphasis supplied).  Put differently, if the Pettegrow Defendants contend that the forum selection clause's application "to any dispute in connection with this agreement" governs the place of trial in this case, then they must concede that Lobster 207 has asserted claims under the APA in this case.  However, that train has long left the station after the Pettegrow Defendants successfully argued previously that "L207 asserts no claims for breach of the APA" in this case.  *See* ECF No. 338 at 7; ECF No. 422 at 11 (the Court's finding that Lobster 207 had no asserted claims under the APA).  That argument, accepted by the Court, takes the forum provision completely out of play.

The law of equity commands that the Pettegrow Defendants cannot have it both ways.  "The equitable doctrine of judicial estoppel is ordinarily applied to prevent a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding."  *US Bank Tr. Nat'l Ass'n as Tr. for VRMTG Asset Tr. v. Tenpenny*, 659 F. Supp. 3d 62, 73 (D. Me. 2023) (internal quotation marks and alterations omitted) (quoting *Guay v. Burack*, 677 F.3d 10, 16 (1st Cir. 2012)).  "This is because of the commonsense rule that where one succeeds in asserting a certain position in a legal proceeding, one may not assume a contrary position in a subsequent proceeding simply because one's interests have changed.  The doctrine is traditionally, although not exclusively, applied when a litigant is playing fast and loose with the courts." *Id.*  (internal quotation marks and alterations omitted) (quoting *Guay v. Burack*, 677 F.3d 10, 16 (1st Cir. 2012)).  The Pettegrow Defendants simply cannot argue that "L207 did not plead any of the three APA-based 'schemes' as a breach of contract," ECF No. 402 at 6-7, in order to benefit from the limitations of the economic loss doctrine and then argue that this very same inapplicable contract governs the venue for *all* disputes

that arise in this action.  The APA is clear – only those disputes that arise in connection with *that agreement* are governed by its forum selection clause.  Because the Pettegrow Defendants have successfully argued that no such disputes exist in this case, they cannot rely on that contract for the location of trial.

But even were the Pettegrow Defendants not estopped from availing themselves of the forum selection clause in the APA, the fact of the matter is that this case *was brought in a federal court in Penobscot County*.  From there, determinations as to the location and scheduling of trial are the sole provence of the Court, which can transfer the trial to Portland or any other place "within the division in which it is pending" at its discretion under 28 U.S.C. § 1404(c).  *See Hancock v. Delta Air Lines, Inc.*, 793 F. Supp. 366, 368 n.1 (D. Me. 1992).[1]  It if for this reason that Local Rule 3(b) instructs litigants where to file their cases but leaves it to the Court to determine where the case will ultimately be tried.  "[O]rdinarily" that means where the case has been filed, but not always.  *See Par. v. City of Elkhart*, No. 3:07-CV-452, 2010 WL 11681234, at *2 (N.D. Ind. Aug. 27, 2010) ("there is no longer any requirement in federal civil cases that venue be laid in a particular division within a district" (quoting 14D WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3809 (3d ed. 2007))).  If more convenient for the Court, its staff, the parties, witnesses, or for any other reason, the Court can order a case "ordinarily to be tried" in Bangor to be tried in Portland without any resort to the 28 U.S.C. § 1404(b) factors.  28 U.S.C. § 1404(c).  *See also Grossman v. Smart*, 73 F.3d 364 (Table), 1995 WL 767893, at *2 (7th Cir. 1995) (unpublished) ("Where a district lacks statutory divisions, courts have discretion under § 1404(c) to select any designated location within the district as the place of trial"); *Phaneuf v. Polaris Indus., Inc.*, No. 1:16-CV-00278-JAW, 2016 WL 4595677, at *3 (D. Me. Sept. 2, 2016)

---

[1] Because "Maine constitutes one judicial district," D. Me. Local R. 3(b), 28 U.S.C. § 1404(c) (governing the transfer of cases within the same division), not 28 U.S.C. 1404(b) (governing transfers from one division to another), applies.

(noting the use of "ordinarily" in Local Rule 3 and setting trial in Bangor due, in part, because "the Court's trial docket in Bangor can accommodate the trial without any undue delay"); D. Me. Local R. 1(a) (noting the Court's ability to relax its local rules in "exceptional circumstances when justice so requires").

Apart from the understandable inconvenience to Mrs. Pettegrow's mother, the Pettegrow Defendants have not identified a single reason why they would be prejudiced by a Portland trial that would not be equally borne by the other parties. According to Trenton Bridge's website, its restaurant is open for takeout only and its dinning room is closed during the winter season, which incidentally is when the Pettegrows are at their family compound in Marathon, Florida. *See J. Pettegrow Dep. Tr.* at 6:14-7:1 (ECF No. 335-12) (testifying that the Pettegrows typically head to Florida during "the first part of January" and that their restaurant in recent years opens on Father's day). All parties have represented to the Court a desire to try this case in the spring so that it concludes *before* the fishing season commences in order to minimize the burden on witnesses; keeping the trial in Bangor could delay it to the point that the fishing season and the trial will overlap. Finally, trying this dispute in Portland is not without precedent – the arbitration hearing was held in Portland as well.

Whether it be the parties or their attorneys, people will have to travel for the trial. Indeed, for every reason to hold the trial in Bangor, the same reasoning applies with equal if not greater force in Portland. Many of the most important witnesses, and those who are likely to be subject to lengthy examinations, are also from Cumberland and Androscoggin counties. For example, Carol Warren, one of the attorneys who negotiated the contracts at issue, resides in Portland. David Sullivan resides in Richmond. Meanwhile, Warren Pettegrow claims to be a Florida resident and has resisted every effort to travel to Bangor for judgment collection proceedings. Put simply, for

every witness hailing from Washington and Hancock counties, there is another residing closer to Portland. Moreover, any additional cost for daily fact witness fees and expenses related to a Portland trial would be dwarfed by the combined cost of transporting, housing and sustaining attorneys and support staff in Bangor for a month. Most importantly, it is only Portland that can accommodate a prompt trial of this four-year old case and the public's interest in it. At bottom, even assuming that the balance of convenience and equities is struck somewhere in the middle, the administrative considerations and convenience of the Court and the interest in a prompt trial should control, and the Court is well within its discretion to order trial in Portland in order to relieve congestion on its docket and burdens on its staff.

Dated at Portland, Maine this 9th day of January, 2024.

/s/ <u>Thimi R. Mina</u>
Thimi R. Mina

/s/ <u>Alfred C. Frawley IV</u>
Alfred C. Frawley IV

McCloskey, Mina, Cunniff & Frawley, LLC
12 City Center
Portland, Maine 04101
Tel.: 207.772.6805
Fax: 207.879.9375
tmina@lawmmc.com
afrawley@lawmmc.com

*Counsel for Lobster 207, LLC*

## CERTIFICATE OF SERVICE

I, Alfred C. Frawley IV, hereby certify that on this 9th day of January, 2024, I filed the foregoing **PLAINTIFF'S REPLY TO OPPOSITIONS TO MOTION TO TRANSFER TRIAL TO PORTLAND, MAINE** with the CM/ECF system, which shall send notification of such filing to counsel of record for all parties.

Dated at Portland, Maine, this 9th day of January, 2024.

/s/  Alfred C. Frawley IV
Alfred C. Frawley IV

McCloskey, Mina, Cunniff & Frawley, LLC
12 City Center
Portland, Maine
Tel.: 207.772.6805
Fax: 207.879.9375
cking@lawmmc.com

*Counsel for Lobster 207, LLC*