UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LOBSTER 207, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:19-cv-00552-LEW |
| | ) |
| WARREN B. PETTEGROW, et al., | ) |
| | ) |
| Defendants | ) |

## **PROCEDURAL ORDER**

The matter is at present administratively closed. Plaintiff Lobster 207 requests clarification why that is the case. Pls.' Mot. for Clarification re.: Case Status and Readiness for Trial (ECF No. 569). For reasons that follow, the request for clarification is granted, the case is reopened, and all further proceedings are administratively stayed for a period of up to 90 days, as set forth in the conclusion of this order.

### Procedural History

The matter is before the court in an atypical procedural context. The Clerk administratively closed the case upon receipt of a notice that the lead defendant, Warren Pettegrow (hereafter, "Debtor"), filed a petition for relief in the United States Bankruptcy Court for the Southern District of Florida (Case no. 24-12140). The matter arises on Plaintiff Lobster 207's request for clarification why the case would close in regard to proceedings against the Debtor's co-defendants, which request is coupled with advocacy seeking a lifting of the administrative closure of the entire case. In response, Defendants

Anthony and Josette Pettegrow and the Trenton Bridge Lobster Pound (hereafter, "Lobster Pound Defendants" or "Non-Debtor Defendants") counter that there are good reasons why the court should extend the stay to them. Plaintiff has replied, taking issue with the arguments made in response.

In effect, although the matter is not before the Court on a motion to extend the stay to include the claims against the Lobster Pound Defendants or any other non-debtor defendant, the parties have, nonetheless, been placed on notice and both Lobster 207 and the Lobster Pound Defendants (the principal non-debtor defendants in this case) have been heard on the matter of whether the stay should be so extended. Accordingly, this procedural order will take up the issue although the briefing has proceeded contrary to customary practice.

BACKGROUND

In this action, Plaintiff Lobster 207 sues, among others, its former CEO, Warren Pettegrow, Pettegrow's parents, Anthony and Josette Pettegrow, and the parents' business, the Trenton Bridge Lobster Pound. The Lobster Pound Defendants sold to Lobster 207 the lobster pound's assets associated with its wholesale lobster sales operation, but not its local retail or lobster buying operations. The transaction was papered by an Asset Purchase Agreement, a Supply and Offtake Agreement, and a Noncompetition Agreement. Lobster 207 alleges that the Lobster Pound Defendants failed to live up to the promises set forth in these contracts in various ways. Lobster 207 also alleges that its erstwhile CEO conspired with his parents to undercut Lobster 207's commercial interests in favor of their own by engaging in a variety of schemes, all of which depended on Warren Pettegrow's disregard

2

of his fiduciary duties, defalcation in regard to corporate revenues and expenditures, and fraud.

A portion of this action, specifically Lobster 207's employment-related claims against Warren Pettegrow, went to arbitration. The arbitrated claims alleged breach of fiduciary duty (Count V) and breach of contract (Count VII). The arbitrator found in favor of Lobster 207 on both counts, denied Pettegrow's related arbitration claim for unpaid wages, and awarded Lobster 207 damages in the amount of $1,021,000. *See* Final Award (ECF No. 242-4). On December 10, 2021, I issued an order confirming the arbitration award and denying Warren Pettegrow's motion to vacate the award. *See* Order Concerning Arbitration Award (ECF No. 269). On January 26, 2022, Final Judgment entered against Warren Pettegrow and in favor of Lobster 207 on the identical counts pressed in this suit: Counts V (breach of fiduciary duty) and VII (breach of contract).

Despite the entry of Final Judgment on Counts V and VII, Warren Pettegrow remains a defendant, along with the Lobster Pound Defendants, on Count I (alleging racketeering activity in violation of 18 U.S.C. § 1962(c) based on, among other things, embezzlement and defalcation), Count II (conspiracy to engage in racketeering), Count III (fraud), Count IV (conversion), Count VI (common law civil conspiracy), and Count IX (unjust enrichment/constructive trust). In support of these claims, Lobster 207 alleges, among other things:

> The racketeering activity . . . was interrelated and continuous in that 1) the Defendants themselves were interrelated through personal and family relationships, business associations, and the continuing formal and informal coordination of their activities; 2) the Defendants directly and indirectly conducted and participated in the racketeering activities for the common

3

> purpose of benefiting the Pettegrow Lobster Enterprise through a series of frauds and thefts . . . .
>
> The Pettegrow Lobster Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of 1) Defendants Warren Pettegrow and Poseidon Charters, Inc.; 2) Defendants Anthony Pettegrow, Josette Pettegrow, and Trenton Bridge, Inc., including their employees and agents; 3) Defendant Stephen Peabody; . . . all of whom associated for the common purpose of defrauding Lobster 207 of money, property, and inventory belonging to Lobster 207 . . . .

Compl. ¶¶ 275, 279.

## DISCUSSION

The automatic stay provision of the Bankruptcy Code automatically stays this proceeding insofar as any claim against Debtor is concerned. *See* 11 U.S.C. § 362(a)(1). As for extension of the stay to apply to claims between other parties, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *see also City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 99 (1st Cir. 2008).

Although it is rarely the case that a district court should extend a bankruptcy stay to claims against non-debtor co-defendants, when the stayed claims against the debtor are intertwined factually with claims against the non-debtor co-defendants, the district court (or the bankruptcy court) may extend the bankruptcy stay to the claims against the non-debtor co-defendants provided that doing so serves the objectives of the automatic stay. *Raudonis as trustee for Walter J. Raudonis 2016 Revocable Tr. v. RealtyShares, Inc.*, 507

F. Supp. 3d 378, 381 (D. Mass. 2020); *Mardice v. Ebony Media Operations*, *LLC*, No. 19-CV-8910, 2021 WL 146358, at *3 (S.D.N.Y. Jan. 15, 2021).

For example, where there is an identity of interest between the debtor and the co-defendant so that relief against the co-defendant will impede the administration of the bankruptcy estate by placing in jeopardy as asset of the estate, then generally the extension of the stay to the co-defendant would be proper. *Raudonis*, 507 F. Supp. at 381–82; *Mardice*, 2021 WL 146358, at *3. In this case, the claims against the Lobster Pound Defendants do not jeopardize an asset of the estate. However, the claims against Defendant Poseidon Charters do jeopardize an asset of the estate because Poseidon Charters is a corporate entity wholly owned by Debtor and, therefore, it and any property it owns are part of the Debtor's estate. Given this context, the administrative stay of the case is appropriately extended to Poseidon Charters. That alone, however, would not militate in favor of a broader stay for the Lobster Pound Defendants or for Defendant Peabody. This matter could proceed effectively to judgment against them without the participation of Poseidon Charters.

Another circumstance that would justify an extension of the stay is one where the action would proceed against non-debtor defendants who, though lacking an identity of interest with the debtor and merely jointly and severally liable with the debtor, are subject to claims that, when reduced to judgment, would effectively operate as a finding or judgment against the debtor. *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986). Though rare, such a scenario might arise where the liability

of the non-debtor defendants depends not wholly on their independent alleged malfeasance but also on the alleged malfeasance of the debtor.[1] *Raudonis*, 507 F. Supp. 3d at 383 ("Because the operations and alleged malfeasance of the defendants were 'interrelated, intertwined and intermingled,' . . . extension of the stay in this case appears to be appropriate." (citation omitted, quoting *Villafane-Colon v. B Open Enterprises, Inc.*, 932 F. Supp. 2d 274, 281 (D.P.R. 2013))); *In re Purdue Pharm. L.P.*, 619 B.R. 38, 50 (S.D.N.Y. 2020) ("[A] trial on harms alleged to have been caused in whole or in part by the debtor is 'related to' the bankruptcy, whether or not they are named as a defendant, because a judgment implicating the debtor's conduct could conceivably 'alter the debtor's rights, liability, options, or freedom of action.'" (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018))). Such legal entanglements may in some cases warrant an extension of the stay to non-debtor co-defendants, minimally on a temporary basis so that there is an opportunity for the bankruptcy court to consider the matter and, potentially, extend the stay of its own accord or else lift the stay altogether as to the district court litigation so that the claim(s) against the debtor's estate can proceed to judgment. *See generally Mardice*, 2021 WL 146358, at *3–4.[2]

---

[1] The Bankruptcy Code withholds the discharge for debts arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Particularly concerning, therefore, might be the adjudication of claims against non-debtor defendants that contemplate a finding as to the debtor's alleged fraud or defalcation while acting as a fiduciary.

[2] Plaintiff may wish to petition the bankruptcy court for relief from the automatic stay to see if this litigation can proceed to trial against all defendants, as the bankruptcy court might lift the stay in order to liquidate the remaining claims against Debtor.

Finally, in exercising discretion on the question of a stay, a district court may consider judicial resources and the interest of having a litigation proceed entire rather than piecemeal. *Yiming Wang v. Xinyi Liu*, 584 B.R. 427, 434 (D. Mass. 2018).

Based on the foregoing background facts and legal authorities, I conclude that, minimally, a temporary stay is in order as to the entire litigation because it is in the interest of judicial economy to avoid piecemeal litigation, the core of the action presents fraud and racketeering allegations that place the Debtor in the eye of the storm even as to the liability of the non-debtor defendants, and the bankruptcy court should be permitted some time to consider the propriety of extending or lifting the stay.

## CONCLUSION

The administrative closure of the case is lifted. However, the Court hereby STAYS ALL PROCEEDINGS for a period of 90 days, absent further order of the court lifting the stay. The parties will provide the Court with a status report on or before July 8, 2024, concerning proceedings in the bankruptcy court.

SO ORDERED.

Dated this 10th day of April, 2024

/s/ Lance E. Walker
Chief U.S. District Judge