UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| LOBSTER 207, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00552-LEW |
| | ) | |
| WARREN B. PETTEGROW, et al., | ) | |
| | ) | |
| Defendants | ) | |

**SECOND ORDER ON MOTION TO EXCLUDE
EVIDENCE OF UNDISCLOSED DAMAGES**

On October 10, 2024, I issued an Order on Motion to Exclude Evidence of Undisclosed Damages (ECF No. 604) in which I outlined the history of Plaintiff's damages disclosures. I reserved ruling to permit Plaintiff to better address the same so that I might come to understand where certain disclosures occurred since they had not occurred in the Rule 26 disclosures themselves.

The matter now returns post-supplement on the Pettegrow Defendants' Motion to Exclude (ECF No. 489), their Response to Plaintiff's Supplemental Disclosure (ECF No. 613) and Plaintiff's Brief in Response (ECF No. 617).

In the prior order I set out the basics of the Rule 26 disclosure requirements. *See also AVX Corp. v. Cabot Corp.*, 251 F.R.D. 70, 76 (D. Mass. 2008) (emphasizing the expectation that supplementation of a damages computation ordinarily will occur within the discovery period). It is the duty of the disclosing party, as the case progresses, "to supplement or correct its disclosure . . . in a timely manner if the party learns that in some

material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Failure to fulfill this duty calls for disallowance of the use of the information in question, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiff has most recently produced its Second Supplemental Initial Disclosures. (ECF No. 613-1/617-6). For the reasons set forth in the Pettegrow Defendants' Response to Plaintiff's Supplemental Disclosure Regarding Damages (ECF No. 613), the Pettegrow Defendants' Motion to Exclude (ECF No. 489) is granted in part pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, as set forth below. My recitation of the categories and computations tracks Plaintiff's November 2024 Second Supplemental Disclosure (ECF No. 613-1), including those categories to which the Pettegrow Defendants have not objected, for ease of future reference.

My evaluation of the Pettegrow Defendants' objections regarding disclosure obligations is animated in part by the reality that this case has traveled a long and winding road. This is relevant because of the limitless opportunities the parties have undoubtedly enjoyed to discover everything in the known universe and beyond about Plaintiff's claims and associated damages, apart from their skepticism that such damages are more metaphysical than the rules of evidence and the good sense of the jury would ultimately allow. I understand the often-irresistible temptation for defendants to knock out damages on first contact with a judge's signature to avoid the troublesome task of testing them in the more dynamic atmosphere of a trial courtroom. Proof problems related to damages

untethered from expert testimony are better left to substantive motion practice or better, the adversarial process of a trial (e.g., witness examination, evidentiary objections, closing arguments) rather than laundered through eve-of-trial protests of disclosure fouls.

**Alleged Schemes**

**1.    BJ Co-Op**

The Pettegrow Defendants object to Plaintiff's disclosure of a range of possible recovery on its BJ Co-Op claim, from "$501,989.10 (had Lobster 207 paid only a $.10 premium) to $987,290.20 (had Lobster 207 paid no premium)."  Pl.'s Sec. Suppl. Discl. at 2.  The record has already demonstrated the historical payment of premiums by Trenton Bridge to the BJ Co-Op prior to the sale of the Trenton Bridge wholesale business, making the disclosure of the entire post-sale premium overkill.  But the disclosure otherwise suffices to preserve the claim for a measure of damages that comports with the evidence disclosed in discovery, which measure of damages may exceed the lower figure even though the evidence would not support the higher figure.

**2.    Recoupment**

No objection: $58,217.40

**3.    Poseidon**

No objection: $835,655.29

**4.    Mixed Lobster**

No objection: $416,104.60

**5.    Dealer Upcharge**

No objection: $16,862.15

6.    **Tubed Lobster**

Plaintiff's recent categorization of alleged damages arising out of its direct payment to Sable in January 2018 is excluded.  The matter of the Sable invoice was mentioned by Plaintiff previously, during arbitration, and the computation is as simple as looking at the invoice itself.  However, the claim falls outside of the allegations recited in support of the Tubed Lobster Scheme at paragraphs 210 through 230 and is a late innovation that is not substantially justified.  Plaintiff's effort to expand the Tubed Lobster Scheme (a fraud claim subject to RICO's statutory damages multiplier) beyond its original scope will be excluded and damages in this category will be limited to the original disclosure ($110,351.79).

### Other Categories

7.    **Double Billing of Lobster Inventory Post Asset Purchase Agreement ("APA")**

No objection: $267,598

8.    **High Tide Invoices**

No objection: $37,075.04

9.    **Line of Credit Interest Incurred to Fund Upcharges**

It is to be expected and reasonably would be expected by the Pettegrow Defendants that a component of Plaintiff's consequential damages would include line of credit interest paid for expenditures that were unnecessary or excessive due to the alleged overcharging of Plaintiff for lobster and other alleged financial mismanagement.  However, what Plaintiff has disclosed is every single dollar of interest ($919,234) paid in connection with its full-scale operation during Warren Pettegrow's tenure.  That does not strike me as a

"calculation" of damages.  Nevertheless, I am not persuaded that any and all recovery tied to interest payments on unnecessary or excessive utilization of the line of credit should be barred and find Plaintiff's disclosure of the gross interest figure to be substantially justified for Rule 26 purposes even though it is inadequate to prove this damage category on its own.

**10.    Crate Lease Expenses Post-APA**

The Pettegrow Defendants complain that Plaintiff has reallocated post-sale crate lease expenses ($422,172.10) from its Lobster Crate Scheme[1] (*see* First Am. Compl., ECF No. 184 ¶¶ 117-126) to other claims such as its non-competition claim without any within-discovery explanation for this "new" approach.  For present purposes, the calculated figure was unquestionably disclosed along with the associated evidence.  It is simply unclear how the disclosure aligns with the remaining claims. This is a problem of proof rather than nondisclosure.  I prefer to make a ruling in the context of the evidence admitted at trial rather than in the abstract and the request for exclusion is denied without prejudice.

**11.    Dead Loss**

In the First Amended Complaint, Plaintiff alleges that Warren Pettegrow "directed trucks carrying lobsters purchased by Lobster 207 to divert their loads to Trenton Bridge . . . before being brought to Lobster 207's Seal Point Facility in order to extract the highest quality lobsters for sale at Trenton Bridge . . . without paying Lobster 207 for them."  FAC

---

[1] As alleged in the FAC, this was an APA-adjacent misrepresentation claim involving preclosing reliance injury, and I dismissed the claim as barred by the economic loss doctrine. *See* ECF No. 422 at 12-13.  Now Plaintiff apparently wants to characterize it as a component of damages secondary to post-closing mismanagement.

¶ 54.  Plaintiff also alleges that Warren Pettegrow directed agents to swap out weakened and/or dying lobsters that were stored at Trenton Bridge for healthier lobster at Plaintiff's Seal Point facility, without compensating Lobster 207.  *Id.* ¶ 246.  The valuation of Plaintiff's total dead loss (or inventory write off) was disclosed in a timely fashion.  But in terms of disclosing a damages calculation, Plaintiff has belatedly disclosed the entirety of its loss even though dead loss is to be expected in the absence of any misconduct.

Projecting expected loss versus actual loss is a matter requiring application of some kind of methodology that would produce a calculation.  That appears to be missing here.  Still, the disclosure should not come as a surprise to the Pettegrow Defendants.  Everyone here understands that, should the evidence support it, some reallocation of these losses would be appropriate.  I therefore decline to exclude the introduction of evidence pertaining to Plaintiff's alleged excessive booking of dead loss and the Trenton Bridge Lobster Pound's alleged minimal booking of dead loss, during Warren's tenure with Plaintiff, though I agree with the Pettegrow Defendants that the disclosed damages figure ($1,263,396.34) is not an accurate projection of Plaintiff's alleged dead loss damages and would not suffice on its own to prove the claim.[2]  Like other categories of damages, this one may ultimately be excluded if it relies on expert testimony not previously disclosed.

---

[2] I disagree with the contention that this category of damages is somehow constrained to Plaintiff's employment-related claims against Warren.  They might also be attributed to alleged breach of the noncompetition agreement and/or the civil conspiracy claim.

12.    **Shipping and Handling**

Plaintiff asserts that it timely disclosed damages amounting to the entirety of Plaintiff's shipping and handling expenses ($965,367) incurred during Warren's tenure because it asserted during arbitration with Warren Pettegrow that "Warren inexplicably cut into L207's margins in order to absorb shipping costs, even though TBLP passed its shipping costs along to processors prior to Closing." ECF No. 617-7 at 20.

This category is like the crate lease expenses discussed previously. The problem is not that the evidence was not disclosed in discovery but rather that there is no apparent correspondence between the shipping and handling expense and one of the remaining claims for relief. Plaintiff obviously wishes it had not incurred this expense, but why the expense amounts to damages is not yet clear. As with the crate lease calculation, the request for exclusion is denied without prejudice.

13.    **Disgorgement of Benefits**

Disgorgement calculations comprised of Warren Pettegrow's employment compensation ($378,722.76 + $113,526) and Lobster 207's payments on its promissory note ($369,457.80 + $632,000) are not excluded for purposes of the jury trial. This information is part of the record and I do not see how these figures could be characterized as undisclosed.

14.    **Disgorgement of Wholesale Lobster Profits per Non-Competition Agreement**

The Non-Competition Agreement stipulates that in the event of a breach the seller must "account for and pay over [profits resulting from] any transaction constituting a breach." NCA ¶ 5(b) (ECF No. 184-2). I see no reason why the jury, if it finds that Plaintiff

proves transactions in breach of the Non-Competition Agreement, should not afford the "disgorgement" remedy as a matter of contract law. Part of the evidence the jury may consider are the lobster-specific profit and loss statements that this disclosure ($2,660,177) is drawn from, as the statements were exchanged in discovery and did not originate from Plaintiff. The request for exclusion is denied.

### 15.    Loss of Goodwill

The Pettegrow Defendants claim that the loss of goodwill category ($1,707,125) has historically been pigeon-holed in a "customer data scheme" associated with the APA. This is an accurate assessment. They object to the reallocation of the identical amount to serve as a disclosure for a new theory of relief. I agree with them that this casual approach to the goodwill category was improper given the nondisclosure of any corresponding effort on the Plaintiff's part to revisit or reexamine the calculation in relation to new theories of relief that turn on alleged post-closing misdeeds and loss of fisherman patronage or favor. The loss of goodwill disclosure is deficient because it reflects that Plaintiffs did not disclose a calculation of damages calibrated to post-closing conduct rather than the original, benefit-of-the-bargain valuation of client relationships. Still, I recognize that goodwill losses and reputational harm are difficult to calculate, calling into question the harmfulness of a nondisclosed "calculation." Ultimately, I decline to foreclose the introduction of all evidence concerning alleged post-sale misappropriation of goodwill or actions harmful to Lobster 207's standing in the community. This entry is made without prejudice to Defendants' ability to move for exclusion of discrete evidence at trial; for instance, new expert testimony not previously disclosed.

16.    **Reputational Damages**

Plaintiff's latest disclosure itemizes "[r]eputational damages, in an amount to be determined." Second Supp. Discl. ¶ 16. Likening loss of goodwill to reputational harm arising from slander or libel, Plaintiff argues that it may request a damages award based on reputational harm without the need for any computation.

> "General damages . . . cover loss of reputation, shame, mortification, injury to the feelings and the like and need not be alleged in detail and require no proof." *F.A.A. v. Cooper*, 566 U.S. 284, 295–96 (2012). There is no way to quantify the reputational damages that Lobster 207 has suffered as a result of underpaying its fishermen while simultaneously overpaying Trenton Bridge and other non-union interests affiliated with the Pettegrows. Whether these damages can be quantified as a loss of goodwill, a loss of Lobster 207's members' equity, or otherwise, is a question for the jury. Put differently, this category of damages is another way for Lobster 207 to prove that it has been damaged in the form of loss of goodwill.

Brief in Response at 22.

I agree with Plaintiff that the alleged loss of fisherman patronage or member equity is a proper category of harm to Plaintiff, but certain methods of measuring the same require pretrial disclosure and discovery. This category is resolved the same way as the goodwill category.

### CONCLUSION

With limited exceptions noted above, I find that Plaintiff has essentially marshaled long-disclosed financial figures to build out its damages disclosures. I am not persuaded that a pretrial exclusionary remedy is appropriate because I am not convinced that these long-disclosed financial figures add up to a "trial by ambush" or that the Pettegrow Defendants are prejudiced in terms of their ability to "formulate a response" in the context

of trial. *Curet-Velazquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 56 (1st Cir. 2011) (quoting *Macaulay v. Anas*, 321 F.3d 45, 50 (1st Cir. 2002)).   That assessment could change, in particular if Plaintiff attempts to introduce new expert testimony at trial.

The Pettegrow Defendants' Motion to Exclude (ECF No. 489) is GRANTED IN PART and DENIED IN PART as set forth above.

SO ORDERED.

Dated this 18th day of December, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge